UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
POSTAL PACKAGES FROM
UPS STORE #625 MAIL BOX 190-324

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Shay C. Mattera, after being duly sworn, depose and state as follows:

1.     I am a Detective of the Metropolitan Police Department who has been deputized as a federal Task Force Officer working with the Federal Bureau of Investigation (FBI) currently assigned to the Joint Terrorism Task Force (JTTF) for the Washington Field Office (WFO). I have been employed by the Metropolitan Police Department for twenty-six years, and assigned to the FBI JTTF for over three years. As a Detective with the Metropolitan Police Department, I have been the affiant on over two hundred search warrants and over one hundred arrest warrants to support the numerous criminal investigations that I have conducted throughout my career. As a Task Force Officer with the FBI JTTF, I have investigated cases involving domestic terrorism, including white supremacist extremism, militia extremists, sovereign citizens, black separatist extremists, and anarchist extremists.

2.     The information set forth in this affidavit is known to me as a result of an investigation personally conducted by me and other law enforcement agents, along with an independent investigation conducted by the Office of the State Attorney for the 20th Judicial Court, in the State of Florida. The statements contained in this affidavit are based in part on information provided to me by other agents and investigators from the Washington Field Office's JTTF, and by information provided to me by investigators from the Office of the State Attorney for the 20th Judicial Court, Florida. Statements in this affidavit are also based in part on a review of records

obtained during the investigation, interviews, and my training and experience as a law enforcement officer. Because this affidavit is being submitted for the limited purpose of supporting a criminal investigation, I am setting forth only those facts and circumstances necessary to establish probable cause for the issuance of the requested warrant. Unless otherwise indicated, all written and oral statements herein are set forth in substance and in part, rather than verbatim.

   3.   This affidavit supports an application for a search warrant to allow the government to open seven (7) mail packages and letters (See Attachment A) that were delivered by the U.S Postal Service to the inside of UPS mailbox 190-324, at UPS Store #625, which is located at 1300 Pennsylvania Avenue NW, Washington DC. The seven letters and packages are each addressed to, or were returned to, the "International Court of Commerce" and remained unclaimed in that mailbox after the contract on that mailbox expired on September 9, 2016.

## JURISDICTION

   4.   This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. See 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within the District of Columbia. *See* 18 U.S.C. § 3237. Additionally, the criminal offenses under investigation are the subject of a grand jury investigation in the District of Columbia.

## PROBABLE CAUSE

5.      On July 19, 2016, information was provided to your affiant by the Washington Regional Threat Analysis Center indicating that the Florida Attorney General, Pamela Jo Bondi, was the recipient of an alleged legal document issued by the International Court of Commerce (ICC), which purported to be located in Washington, DC.  Further investigation showed that the documents issued by the ICC had been used in connection with the filing of a number of false liens against government officials in the state of Florida.  Based on my training and experience, the tactic of filing false liens against government officials is often conducted by individuals and groups who consider themselves to be "sovereign citizens."[1]

6.      During the course of your affiant's investigation into this matter, the Florida Office of the State Attorney 20th Judicial Circuit advised your affiant that a sixteen-month criminal investigation had been conducted against an individual named Randal Rosado, and the fictitious "International Court of Commerce," into the issuance of fraudulent legal documents that were used to support the filing of false liens against government officials.

7.      Based on the investigation conducted in Florida, your affiant has learned that Randal Rosado solicited money from individuals who were in the process of having their homes foreclosed against them, or who had other pending legal actions against them.  Rosado offered his services to these individuals, promising them that he could assist them with their legal troubles. He specifically told one such individual (W-1) that he would "lien up" those involved in the foreclosure process of W-1's property.  W-1 believed the purpose of those liens was to create leverage that would cause the parties involved in his foreclosure to release his property deed.

---

[1] Sovereign citizen" is a catchall phrase referring to a variety of anti-government individuals and groups.  Sovereign citizens adhere to the view that the existing American governmental structure, including the courts and law enforcement, is illegitimate and that they, the sovereign citizens, retain an individual common law identity exempting them from the authority of those fraudulent government institutions.

8.     In another instance, a father (W-2) hired Mr. Rosado, believing him to be an attorney, to handle an appeal in a criminal case for W-2's son, who had been convicted and sentenced to a ten-year period of incarceration for a sex crime. In addition to filing several motions with the court of a more traditional nature (including a motion to dismiss the complaint with prejudice, and a memorandum of law), Rosado also caused fictitious liens against real property to be filed with the Secretary of the State of Florida and the Saint Lucie County Clerk of Court against every individual involved in the criminal case, to include the judge, the clerk of court, and the attorneys.

9.     A third individual, W-3, provided detailed information about Rosado's activities. At the time that W-3 provided this information, W-3 was detained and pending trial on multiple charges that he filed or directed another to file fraudulent documents that purported to affect a public officer's interest in their property with the intent to defraud or harass that officer.

10.    In August 2014, Santander Bank initiated foreclosure proceedings against W-3 in Lee County, Florida. In October 2014, Wells Fargo Bank, N.A., instituted foreclosure proceedings against W-3 in Lee County, Florida. Thereafter, W-3 hired Randal Rosado to assist him with these two foreclosure disputes.

11.    According to W-3, Rosado drafted multiple documents on W-3's behalf. Three of these documents were entitled "Notice of Distress of Bond and Affidavit of Commercial Lien." These documents, which are rambling and incoherent at times, alleged that the officials and attorneys involved in the two foreclosure proceedings against W-3 committed multiple violations of the United States Constitution and the Bill of Rights as to W-3. The documents alleged damages in the amount of $1,480,000 against the judge in these two cases and the Lee County Clerk of Court, Linda Doggett; $2,220,000 against the attorneys for Wells Fargo Bank, and $2,960,000 against the attorneys for Santander Bank. Rosado sent these documents to W-3 using the U.S.

4

Mail. W-3 signed these "affidavits" before a notary public and returned them to Rosado, again using the U.S. Mail.

12.     The Florida investigation has demonstrated that Rosado, in turn, e-filed these documents with the Lee County Circuit Court in W-3's two pending foreclosures disputes in September and October 2014. Specifically, an employee at the Florida Court Clerks and Comptrollers reviewed the records transmitted through the Lee County Clerk of Court E-Filing Portal. The employee determined that the filings described above were filed using an E-Portal account established in W-3's name. The IP address from which the documents were sent, however, is associated with 216 16th Place SW, Vero Beach, Florida. The owner of this address confirmed to law enforcement that this home was rented to Randal and Michelle Rosado from November 1, 2013, to September 20, 2015. W-3 denied e-filing these documents himself, claiming that he lacked the technical ability to do so.

13.     Thereafter, Rosado caused these "liens" to be electronically filed with Florida UCC, LLC, which is the contracting company hired by the Florida Secretary of State to manage all record keeping responsibilities for UCC filings. Rosario filed UCC-1 Financing Statements to enforce each of the "liens" described above; these liens in turn became publically available in the Florida UCC, LCC database.

14.     Linda Doggett, the Lee County Clerk of Court, filed a civil action (14-CA-003512) to have the UCC filings against her removed from public records. This case was assigned to Judge John Duryea. Thereafter, on May 8, 2015, Rosado created and filed a pleading in that case, using W-3's name, entitled "Affidavit of Distress of Bond and Notice of Commercial Lien" seeking $2,220,000 in damages from Linda Doggett, Judge Duryea, and the attorneys for Florida UCC, LCC.

15.     This document was accompanied by a "Notice of Intent to Levy Commercial Lien Obligations" on letterhead bearing a seal and the heading "The International Court of Commerce." This document is formatted in the style of a typical court document, listing W-3 as the claimant and Doggett, Duryea, and the attorneys for Florida UCC, LCC as respondents.  The document bears case number "ICC-2015-0010507."  The document further states that it relates to a "Private Administrative Proceeding."  The document included, as an exhibit, multiple documents titled "Summons" addressed to each of the respondents.

16.     On May 27, 2015, Judge Duryea granted Linda Doggett's motion for summary judgment.

17.     On January 29, 2016, Judge Duryea received a U.S. Certified Mail package from the International Court of Commerce at his home address.  Further investigation revealed that Linda Doggett, a second Circuit Court judge, and half a dozen attorneys received similar mailings from the ICC.  The mailings included a document titled "Notice of Default in Dishonor and Acceptance of Commercial Liens and Additional Notice of Default for Damages and Satisfied Claims" seeking $10,029,000 in damages from each respondent.  These documents are similar in nature and appearance to the document described in Paragraph 15, and they purport to be issued by the "International Court of Commerce."

18.     The "International Court of Commerce" maintained a website and a physical address in the District of Columbia.  According to its website, www.courtofcommerce.org, the "International Court of Commerce" held itself out to be a "Court of Record established under the Common Law," to provide an alternative dispute resolution forum for the adjudication of judicial and administrative proceedings.  Its website stated that the ICC "provides a platform for the administrative process to resolve disputes by presenting facts and evidence."  In such administrative proceedings, according to the ICC website, "the parties have granted the Court the

authority to make determinations based on specific agreed upon terms and conditions." The website required individuals to complete an "Acknowledgment of Adjudication Agreement," and to pay specified fees to the "International Court of Commerce."

19.     A check of the International Court of Commerce website revealed that, as of June 9, 2016, visitors to the site were instructed that all new "court filings" for the International Court of Commerce should be delivered through the website or mailed to the International Court of Commerce at 1300 Pennsylvania Avenue NW, #190-324, Washington, DC 20004. Additionally, the website listed Washington, DC-based telephone number 202-930-3529 under the "Contact the Court" section. The www.courtofcommerce.org website is no longer active.

20.     Your affiant has learned that the www.courtofcommerce.org website was established by Michelle Rosado, Randal Rosado's wife. Information subpoenaed from the website host indicated that Ms. Rosado used a Palm Beach, Florida address when she registered the domain. This Florida address is identical to the address on Randal Rosado's Florida driver's license. The address is actually UPS Store mailbox (#317-141) located in Palm Beach, Florida, which is registered to Randal Rosado.

21.     Financial Records produced by Wells Fargo Bank established that Randal Rosado had signature authority for an account opened in the name of the International Court of Commerce.[2]

22.     Your affiant's investigation has revealed that the address the "International Court of Commerce," 1300 Pennsylvania Avenue NW, #190-324, Washington, DC 20004 is, in actuality, a UPS mailbox #190-324 located inside of UPS store #625. UPS mailbox 190-324 is owned, maintained, controlled, and operated by Mr. Naman Bhatia, the owner of UPS store #625. During

---

2     Anthony Williams, a self-proclaimed sovereign citizen who is current incarcerated in Broward County for practicing law without a license, also had signature authority for this account.

the course of this investigation, Mr. Bhatia informed the affiant that UPS mailbox 190-324 was leased to a Mr. Randy Rosado under the name of the "International Court of Commerce" for a one-year term.

23.    On September 8, 2016, Mr. Bhatia informed the affiant that Rosado's contract for UPS mailbox 190-324 would expire on September 9, 2016. Mr. Bhatia said he could turn over any mail that remained in UPS mailbox 190-324 after September 9, 2016, to any U.S. Postal Inspector. On September 12, 2016, your affiant, along with FBI Special Agent Robin Bairstow and US Postal Inspector Heidi Lescault, went to UPS store #625 and met with Mr. Bhatia. During that meeting, Mr. Bhatia turned over the seven (7) mail packages and letters that remained inside UPS mailbox 190-324 to U.S. Postal Inspector Lescault. The seven (7) abandoned mail packages and letters are presently being held as evidence in the ongoing investigation of the International Court of Commerce for violations of 18 U.S.C. § 1341, Frauds and Swindles.

24.    On Thursday, September 8, 2016, Mr. Naman Bhatia, the owner of UPS store #625 was interviewed and given a subpoena for information relating to UPS mailbox 190-324. Mr. Bhatia is the custodian of all records for all contracts of all the leased UPS mailboxes in UPS store #625. Mr. Bhatia provided the contract, billing information and forwarding information for UPS mailbox 190-324. UPS mailbox 190-324 was leased by Randy Rosado, and the service agreement for that UPS mailbox was listed in Rosado's company name, the International Court of Commerce. Rosado's agreement was signed on July 7, 2015, and the contract expired on September 9, 2016. Mr. Bhatia advised that he had never met Rosado and that the contract was arranged over the phone; everything required for leasing the mailbox was sent via email.

25.    Rosado provided two forms of identification via email to Mr. Bhatia to rent UPS mailbox 190-324. Rosado provided his U.S. Passport number 457571059 dated December 23, 2008, and an International Driver's License with identification number 1AA366845-QTU. Based

8

on information learned by your affiant, the driver's license provided by Rosado is a fraudulent identification that is commonly used by persons who identify themselves as sovereign citizens. Additionally, a copy of Rosado's completed and notarized U.S. Postal Service Form 1583 was provided by Mr. Bhatia. Rosado also listed the International Court of Commerce as the corporation on his U.S. Postal Service PS Form 1583. Mr. Bhatia stated that the store records revealed that mail was only forwarded once from UPS mailbox 190-324. A copy of the records showed one package was forwarded from UPS mailbox 190-324 to Randy Rosado on January 12, 2016; the recipients listed to receive this package were the International Court of Commerce and Randy Rosado.

26.     On June 28, 2016, Rosado was arrested in Goshen, New York. He was extradited to Florida, where he is detained and pending prosecution on several counts from Florida statute 843.0855(4), Criminal Actions Under Color of Law or Through the Use of Simulated Legal Process. Mr. Rosado is represented by attorney Robert Ingham, who appears to be a solo practitioner.

27.     On September 12, 2016, Mr. Bhatia turned over the seven (7) mail packages and letters from UPS mailbox 190-324, which was three days after Rosado's contract expired for UPS mailbox 190-324. The seven (7) mail packages and letters included four (4) letters that were certified letters marked "return to sender," with the sender listed as the International Court of Commerce, and an address of UPS mailbox 190-324, 1300 Pennsylvania Ave. NW, Washington DC.

**28.**     The remaining three (3) packages and letters were sent and addressed to the International Court of Commerce with the address of 190-324, 1300 Pennsylvania Ave. NW, Washington DC. All three of these items bear the return addresses of what appear to be legitimate law firms: BURR FOREMAN, from Alabama, DYKEMA COX SMITH, from Texas, and

BRYAN CAVE, from Florida.  In an abundance of caution, an agent with no connection to this case will be assigned to review these documents to avoid the compromise of any legitimate attorney client privilege that may exist.

## CONCLUSION

29.     Based on the facts contained herein, there is probable cause to believe that Randy Rosado, by and through the "International Court of Commerce," unlawfully used mail services for the purposes of obtaining money or property under false or fraudulent pretenses.  Rosado used the "International Court of Commerce" to issue fictitious legal documents to support the issuance of false liens against public officials.  In addition to being violations of state law, the mailing of the above-described fictitious documents by Rosado, through and on behalf of the International Court of Commerce in the District of Columbia, also constituted violations of 18 U.S.C. § 1341.

30.     There is also probable cause to believe that within the seven (7) packages and letters there is evidence of fraudulent activity, including fraudulent legal claims, or information concerning such claims, rendered by an entity calling itself the International Court of Commerce. Additionally, there is probable cause to believe that within the seven packages and letters there is evidence of receipt of money or billings for fraudulent legal services rendered by the International Court of Commerce.

31.     Based on the foregoing, there is probable cause to believe that the seven packages at issue in this warrant application contain evidence of violations of 18 U.S.C. § 1341, Frauds and Swindles.   These seven packages were not only addressed to Rosado and/or the entity called International Court of Commerce, but, as described herein, that mailbox was openly used by Rosado and the International Court of Commerce to facilitate the conduct of fraudulent activities, to wit, the filing of false legal claims.   Accordingly, I request that the Court issue the proposed search warrant.

FURTHER THIS AFFIANT SAYETH NOT.

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

A.      Once search warrant is issued, seven (7) mail letters and packages from International Court of Commerce UPS mailbox 190-324 from UPS store #625, at 1300 Pennsylvania Avenue NW, Washington DC, that are currently secured at the Washington Field Office, will be opened and all documents within the seven (7) mail letters and packages will reviewed by law enforcement personnel. Of the (7) mail letters and packages, four (4) are certified letters that all were returned to sender. Each of these letters have the return address of International Court of Commerce, 1300 Pennsylvania Ave. NW, Suite 190-324, Washington DC 20004 listed on them.

B.      These letters were sent to the following subjects prior to being returned to the International Court of Commerce, and can be identified by the subject's name and address listed on the front of the letter or package:

1- ANDREW YIN CHUNG LEE
44 N Kuakini Street
Honolulu, HI 96817-2494

2- BLUE H. KAANEHE
2726 Laniloa Road
Honolulu, HI 96813

3- JOHN G. ALDRIDGE JR.
951 W. Conway Dr NW
Atlanta, GA 30327

4- KARYN AKEMI DOI
43 Coelho Way
Honolulu, HI 96817-1434

C.      The three (3) remaining letters were addressed to International Court of Commerce, 1300 Pennsylvania Ave. NW, Suite 190-324.  These letters were sent from the following subjects, and can be identified by the subject's name and address listed on the front of the letter or package:

1- BURR FORMAN (LLP)
420 N. Twentieth Street, Suite 3400
Birmingham, Alabama 35203

2- DYKEMA COX SMITH
112 East Pecan Street
San Antonio, TX 78205

3- FedEx Package from SCOTT R. POPP / BRYAN CAVE (LLC)
200 South Biscayne Blvd
Miami, FL. 33131

## ATTACHMENT B

ITEMS TO BE SEIZED

Law enforcement personnel will review all documents within each of the letters and packages. The documents to be seized consists of fraudulent legal documents of false promises, false liens, orders, judgments or other fraudulent legal documents for affecting title to real estate or personal property; any documents offering these fraudulent legal services; records in the form of payment or billing for such fraudulent services; documentation supporting such fraudulent activity against any government officials; and any documentation produced by the ICC to file false liens, orders, judgments or other fraudulent legal documents for affecting title to real estate or personal property; and any documentation inquiring or requesting such fraudulent legal services by the ICC.